I'm Stephanie Simpson. I'm representing the appellant Genevieve Antoniewicz. This is a case which involves parents' benefits. I think the sole issue here is the amount of money that was available for support in the agreed period of August 1997 to November 1997. Henry Antoniewicz, the appellant's son, worked and made, let's see, made $39,000 and so forth per year. So in the period at issue, if you divide $39,000 by 12 and multiply it by the 4 months, there was $13,104 available. Now, Mrs. Antoniewicz also worked during the period. She made $15,787. Divide that by 12 and multiply it by the 4 months that we're concerned with, and that came to, let's see, 5262. She also received Social Security benefits of 622 a month, and for 4 months that came to 2488. So Genevieve Antoniewicz had her own income or money available for her of $7,750. Now, during that, Henry Antoniewicz, besides his regular job, he did odd jobs of painting, so forth, computer work, and so forth. And we, in the file, we have 5 affidavits from people who did work for Henry Antoniewicz, did work for them. And those 5 come up to $11,238 in the 4-month period of August 1997 to November 1997. Now, Henry Antoniewicz left his regular job in November 1997 and began to collect a pension of $2,100 a month. So when we add what he had per month and also what Genevieve had from her Social Security and earnings, it comes to $24,342 in the 4 months at issue. No, I'm sorry, it comes to $32,092. Now, when you divide that by 2, you get $16,046, which is for Genevieve's support during the 4 months at issue. And then I divided that by 2 to get half, because she had to provide half her support. And that came to $8,023. And that is greater, much more, than the $7,750 that she had from her earnings and Social Security in the period at issue. So therefore, it shows that during the 4 months of August 1997 through November 1997, which is the period at issue, Henry did provide over half support for his mother in that period. Now, evidently, the issue here was whether or not he actually did this work. Now, there were 4 affidavits under penalty of perjury. The ALJ had at his disposal, if he thought there was anything that he wanted to know more about that, he could have subpoenaed them. He didn't subpoena them.  So what we have here is that Henry did provide over 50% of his mother's support in the 4 months at issue. Pardon? The ALJ asked to subpoena these people by you. Did you ask him to subpoena these people? I didn't understand you. Did you what? Did he, did the ALJ, was the ALJ asked by you to issue subpoenas to these people? Yes, I did. We had 3 administrative hearings. The judge of the first 2 administrative hearings found that she was provided the support. Then the appeals council sent it back and said check further on whether or not there was this money available. We appeared before the 3rd ALJ, and he did send out letters to these people. Two people replied, one of the persons was his sister, and she testified at the hearing that she knew her brother did all this outside work. And she testified as to how much she herself had paid. And I did suggest to the judge that if there's any question, he should subpoena them. He did not subpoena them. So it would appear that based upon the evidence in the record and the regulations that Henry Antoniewicz, the decedent, did provide over 50% of, over 50% of support for his mother in the period at issue. Any questions? I guess not. Judge Connell, did you have anything? No, thank you, Ms. Simpson. We have about three and a half minutes left in rebuttal. Good morning, Your Honors. I'm Michael Kabatage, appearing on behalf of the APOLE, Michael J. Astrew, Commissioner for Social Security. SSA has a thorough administrative appeals process that has multiple layers of review and provides multiple opportunities for a claimant to provide evidence to support a claim for benefits. This administrative appeals process, which serves to ferret out unproven claims for benefits, played itself out in this case fully and resulted in a proper outcome. As the ALJ found, the claimant, throughout her own appeals process, failed to carry her burden that she was entitled to parents' insurance benefits, based on the account of her son, Henry. More specifically, the claimant failed to satisfy the one-half support requirement under 20 CFR section 404.366B. Under that regulation, a claimant who is claiming parents' insurance benefits is required, among other things, to show that her income, together with all sources of income available to her for her support, was equal to one-half or less of her ordinary living expenses or the cost of her support. It is undisputed that a claimant cannot meet the one-half support requirement if her son had no self-employment income during those four months in 1997, August through November 1997. The claimant failed to show this. The only documents that she provided in support of this claim of self-employment are the five affidavits of her son's alleged customers, along with the corresponding invoices. Those affidavits show a total of about $11,235 or $238 of self-employment income, all paid in cash between the months of August and November 1997. The LJ found that these documents were questionable. He noted that these documents were inconsistent with SSA's records of earnings. SSA's records of earnings show that the claimant earned only $39,312 in 1997. SSA's records of earnings, which are in the record, show no other source of income, no self-employment income whatsoever. Those records are conclusive. 20 CFR Section 404.803C1 says that SSA's records of earnings are conclusive on the issue of income, and where there's no self-employment income, the records are conclusive that there is no self-employment income during the year in question. Plus, as you'll see from that document in the record, the claimant signed that document verifying that that 1997 figure was accurate, $39,312. There was no additional $11,000 in self-employment income. The LJ also found that these affidavits, along with their corresponding invoices, were inconsistent with claimant's own statement, which she submitted in support of her application for parents' insurance benefits. In that statement, claimant said that her son earned $39,312 in 1997, along with a union pension of about $2,000. There was no mention in that statement of any kind of self-employment income, no mention of another $11,000 that he purportedly made in cash that year. The LJ also cited Henry's 1997 federal tax return. Again, no indication of self-employment. All that federal tax return shows is the same $39,312 earned as wages from an employer. The LJ also noted that claimant's allegation of self-employment income in 1997 from her son was questionable based on the timing of that allegation. The LJ noted that claimant only made that allegation in April 2002. This was one month after the appeals counsel told her that it was inclined to deny her claim based on the fact that she did not meet the one-half support requirement. Noting this timing, the LJ found that the claimant's own statement, which I referenced earlier, as well as the SSA's records of earnings, were more reliable since they were closer in time to the claimant's death. Did the ALJ make any findings as to the reliability of the affidavits and the work orders that were submitted as proof by the petitioner? Yes, he did. Well, it's a matter of a burden of proof as opposed to the credibility of these documents. Claimant had the burden of proof to show that she was receiving one-half support that she was receiving at least one-half support from her son. Normally, under 20 CFR section 404.750, these records would be sufficient. They would be preferable evidence of support. However, because of these reasons that the ALJ cited, he found them to be questionable, and under 404.709 of the same regulations, if information raises a doubt about preferred evidence, the ALJ is entitled to ask for additional evidence. So it's not like the ALJ questioned the reliability. He questioned the sufficiency of these documents to prove the claim and asked for more documents. Claimant failed to submit additional documents that the ALJ requested. Claimant failed to carry her burden of proof. One thing I'd like to note in response to the appellant's argument is that there's no evidence in the record that claimant or her attorney requested a subpoena of these witnesses. There are procedures in the commissioner's regulations that provide for requesting subpoenas. Under 20 CFR section 404.950, parties who wish to subpoena witnesses must file written requests for the issuance of the subpoenas five days before the hearing. The hearing was held in July 2004, July 6th. Looking at the transcript of that hearing, there's no indication that the claimant's attorney ever requested a subpoena. Nothing in the records suggests that she made any kind of request. Excuse me. What do you do when you think that your documents are fine and then the ALJ questions them? And at that point you realize that you need a subpoena that's not five days before the hearing because five days before the hearing you didn't think there was a problem. Now what do you do? Well, I mentioned the appeals process in this case, the exhaustive appeals process that Social Security had. During this whole time period, between 2002 and 2005, the agency had been requesting evidence, further evidence of self-employment income as well as income of any kind of income of her son as well as any other corroborating evidence to support that allegation of self-employment income. That hearing of July 2004 was not the first time that claimant ever received this request for evidence or ever was notified of the need for evidence. In fact, right before that hearing on July 21, 2003, ALJ Urban, who was the presiding ALJ, sent letters to all of the declarants, all five of the declarants, asking for additional evidence, asking for bank records to support their claims, asking for any other kind of evidence showing that they had as much as $1,500 in cash to provide to pay Henry for his services. When he received no response, ALJ Urban sent another round of letters, a second round, on January 7, 2004. He received three responses. Two of those responses said that they had no documents from 1997. They submitted no additional evidence. The third response was a telephone call from Ms. Debra Shear, their report of contact is in the record. Ms. Shear said that she looked at the document that the ALJ provided her, the purported affidavit, and she said that she was not the one who filled in the amount paid on that document. She also said that she did not fill in the date. She said she was unwilling to provide a further statement because the claimant, Genevieve, was her friend, and she was not willing to damage their relationship, so she had nothing further to say. Prior to that, the Appeals Council had asked for records of self-employment on June 4, 2002, and again on April 9, 2003, asking for bank records or anything else that would support the allegation of self-employment. Also, at the hearing of August 1, 2002, the prior ALJ asked the claimant and her representative to submit bank records, another evidence of self-employment. That ALJ realized that 1997 was about five years back, and the claimant may not be able to get any bank records. He therefore advised the claimant that if that's not possible, any further affidavits would be okay. Anything from the claimant saying, anything from those declarants saying, I went to the bank on this day, I withdrew money on this day, I gave cash to Henry on this day, none of that was submitted. In fact, the ALJ had asked the claimant and her counsel to provide, with those round of letters to the declarants, the ALJ also sent a letter to the claimant's counsel asking her to provide bank records to support the claim that the claimant's and her son's funds were pooled and that they shared in support of the household. At the hearing of July 6, 2004, ALJ Urban asked the claimant's counsel. Please start to wrap up, if you would. You're over your time. They asked the claimant's counsel why she did not submit the bank records. She said she did not make an effort to do that. Okay. Thank you very much. Ms. Simpson, back to you. Thank you. May I just state this, that the affidavits have not been rebutted. The judge had the authority to subpoena them. What he did ask them is to show me evidence where you have the money. Now, a lot of people have $1,000 in the house. That's not much, or $250 or so. This is what he seemed concerned with. Now, before Henry passed away, he shredded everything he had. His mother testified. He knew he was dying, and he just shredded everything. He did have three telephones in the house. He did have an accountant. She could not locate the accountant and so forth. But when he was dying, he just shredded everything. So let me just add this, that the people did pay the $11,000-plus in that period of time. And with Henry's money and also the evidence does support that Henry did provide over 50 percent of his mother's support in the period of issue as required. Thank you. May I ask you, Ms. Simpson, where in the record could we find your request? Honey? Where in the record would we find your request that you ask the ALJ to subpoena these affiance? It should be, I did ask at the third hearing, I did ask Judge Urban to subpoena. And he just did nothing about it. Where in the record? Is that part of the record? That should be part of the record. I remember asking him when he was considered, no, the sister testified, Perry, Natalie Perry. She did pay him about $1,800 for computer work, painting, and so forth. And Mr. Rowland answered one of the letters, but he didn't appear. As I said, the judge had the authority as a judge to subpoena and question them, and he didn't. And the money involved, $11,000 for four months, is not that much. And in the record, I did ask, it should be there, that I did ask Judge Urban at the third administrative hearing to subpoena the people if he wanted further evidence. And he just didn't do it. The record site is ER 16, colon 5-8. Pardon? The record site. I have the record site for that. All right. Thank you. Thank you, too, sir. The case just argued is submitted. Thank you very much. Thank you. The next two cases, United States v. Guy, and United States v. DeSoto, they are submitted on the briefs as is the last case calendar today, United States v. Peridotta, Polo, and Preciado. Those are submitted. Next case then to be argued is 0750576, United States v. Rodriguez. Each side will have 15 minutes.
judges: Conlon, Hall, Silverman